KENNEDY BERKLEY
119 West Iron Avenue, 7th Floor
P.O. Box 2567
Salina, Kansas 67402-2567
(785) 825-4674 [Telephone]
(785) 825-5936 [Fax]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TRIANGLE INSURANCE COMPANY, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 6:21-cv-01190-JWB-ADM |
| SKYLAND GRAIN, LLC, | ) ) ) |
| Defendant. | ) ) |

**DEFENDANT SKYLAND GRAIN, LLC'S MEMORANDUM BRIEF
IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Skyland Grain, LLC ("Skyland") hereby submits the following memorandum brief in opposition to the motion for summary judgment filed herein by Plaintiff Triangle Insurance Company, Inc. ("Triangle"). For the reasons that follow, Skyland respectfully submits that Triangle's Motion for Summary Judgment should be denied in its entirety and that the case be allowed to proceed to trial on the merits.

**NATURE OF THE CASE**

It is Skyland's contention that Triangle has a duty to defend and indemnify Skyland in the Underlying Lawsuit under the Policy's Property Insurance section, which covers loss and theft of Stock. Skyland's core contention is that Meyer Ag effectively stole the grain from Agrifund by transferring it from Meyer Ag to TCC to avoid paying Agrifund.

Skyland further contends that it owed no duty to Agrifund when it purchased the grain in question. TCC was not listed on the Notice or any other Notice that Skyland received. Furthermore, the Notice applied only to crops grown on certain land and was not a blanket security interest notice applicable to all crops grown by the Debtors. Not all of the crops were grown on land subject to the security interest.

Additionally, Skyland was under no obligation to investigate the ownership of the grain as it is not a fact finder or investigator as the policy does not require this duty of Skyland in any way which is of import because Skyland's employees were not involved in the deception of Agrifund which, if they were, may negate coverage under the policy.

It is standard industry practice to assign grain contracts, which the policy does not prohibit. Accordingly, it was not unusual for grain to be transferred from Meyer Ag to TCC, and the contracts for sale to be assigned along with the transferred grain. Thus, the simple transfer of grain was nothing that would have or should have raised red flags for Skyland.

**RESPONSE TO PLAINTIFF'S**
**STATEMENT OF UNCONTROVERTED FACTS**

1. Uncontroverted.
2. Uncontroverted.
3. Uncontroverted.
4. Uncontroverted.
5. Uncontroverted.
6. Uncontroverted.
7. Uncontroverted.
8. Uncontroverted.

9. Uncontroverted that the contracts speak for themselves.

10. Uncontroverted.

11. Uncontroverted.

12. Uncontroverted.

13. Uncontroverted.

14. Uncontroverted.

15. Uncontroverted that there is no written documentation; however controverted to the extent that Plaintiff's are asserts there is no documentation. [Defendant's Response to Plaintiff's Interrogatory No. 19 ("The initial conversation Lori Deyoe had with Travis regarding transferring grain to TCC happened between 9/11 and 9/25 of 2020. . . . Travis indicated he would haul everything in under Meyer Ag, LLC because that is where the business units were, buy would transfer everything to TCC.") Defendant Exhibit 2 at page 13].

16. Uncontroverted.

17. Uncontroverted.

18. Uncontroverted.

19. Uncontroverted.

20. Uncontroverted.

21. Uncontroverted.

22. Uncontroverted that the lawsuit speaks for itself.

23. Uncontroverted.

24. Uncontroverted.

25. Uncontroverted that the underlying lawsuit contains this allegation.

26. Uncontroverted.

27. Uncontroverted.

28. Uncontroverted.

29. Uncontroverted.

30. Uncontroverted.

31. Uncontroverted.

32. Uncontroverted.

33. Uncontroverted.

34. Uncontroverted.

35. Uncontroverted.

36. Uncontroverted.

37. Uncontroverted.

38. Uncontroverted.

39. Uncontroverted that the Tri-Pak Insurance Policy says what it says.

40. Uncontroverted that the Tri-Pak Insurance Policy says what it says.

41. Uncontroverted that the Tri-Pak Insurance Policy says what it says.

42. Uncontroverted that the Tri-Pak Insurance Policy says what it says.

43. Uncontroverted that the Tri-Pak Insurance Policy says what it says.

44. Uncontroverted.

45. Uncontroverted.

46. Uncontroverted.

47. Uncontroverted.

48. Uncontroverted that the PTO speaks for itself.

## ADDITIONAL MATERIAL FACTS

1. The 2020 Notice of Security Interest did not have Total Crop Care, LLC (TCC) listed on the Notice. [Notice of Security Interest to Buyer of Farm Products, Defendant Exhibit 1 at page 1].

2. The grain purchased by Skyland from September 2020 through January 2021 was not subject to the Notice. [Defendant's Responses to Plaintiff's Interrogatory No. 5, Defendant Exhibit 2 at page 7].

3. Further, the Notice only applied to crops grown on certain land and was not a blanket Notice. Plaintiff has not come forward with evidence to suggest otherwise. [Defendant's Responses to Plaintiff's Interrogatory No. 11, Defendant Exhibit 2 at page 11].

4. When he delivered the grain, Travis Meyer requested that Skyland transfer the grain from his other accounts to that of TCC during the time period in question. The grain was then sold under TCC. [Defendant's Responses to Plaintiff's Interrogatory Nos. 6 & 12, Defendant Exhibit 2 at pages 7-8; 11].

5. Skyland was within its right to transfer the grain once Travis Meyer made that request of Skyland. Skyland did not own the grain and once the transfer was requested, Skyland was obligated to make the transfer. When Skyland purchased the grain from TCC it did not have a Notice for TCC and purchased the grain free from any lien. A Notice is only applicable when grain is purchased, and Skyland is not required to police customer accounts when transfers are made. [Defendant's Responses to Plaintiff's Interrogatory No. 18, Defendant Exhibit 2 at pages 12-13].

## ISSUES

Plaintiff's motion for summary judgment presents the following issue for determination by the Court:

Can Skyland meet its burden of proof of showing that here is coverage under the Policy's Property Insurance Section?

## ARGUMENT AND AUTHORITIES

Skyland respectfully submits that there are questions of fact and issues of law that preclude summary judgment in favor of Triangle. Specifically, there is evidence that Skyland has coverage under the Policy for the actions it took it buying and selling the grain and despite Triangle's contentions Skyland did not owe a duty to Triangle to act as the grain police and determine where the grain came from or to determine whether it was subject to the security agreement in question.

### Standards for Summary Judgment

A Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The general rules relating to a Courts consideration of a motion for summary judgment are well established. First, the party requesting summary judgment bears the burden of establishing that there is no question of material fact and that he or she is entitled to judgment as a matter of law. *Douglass v. GMC*, 368 F. Supp. 2d 1220, 1227-1228 (D. Kan. 2005). A fact is material if it might affect the outcome of the case. *See Id*. Second, this Court must resolve all doubts against the moving party and will construe all evidence in light most favorable to the defending party. *Id*. (citing *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998)). In doing so, this Court should take all factual inferences against the moving party and in

favor of the defending party. *Id*. Third, courts will not weigh the credibility of witnesses or other evidence and will "generally find summary judgment to be inappropriate where intent, motive or state of mind are essential elements of the case." *Barber v. General Electric Co.*, 648 F.2d 1272, 1276 (10th Cir. 1981); *6-Pt. 2 Moore's Federal Practice* ¶ 56.18 [8] (2nd Ed. 1988); *Federal Civil Rules Handbook* 710-13 (West 2000).

As the party requesting summary judgment, Plaintiff bears the burden of establishing that there are no questions of material fact. *Douglass*, 368 F. Supp. 2d at 1227-1228. When viewing the totality of the circumstances and the evidence produced by the parties, Skyland contends that application of the above standards to the facts of this case show that Plaintiff's motion for summary judgment should be denied.

**General Law Regarding Insurance Claims**

The Plaintiff asserts that the parties have contractually agreed upon Oklahoma law as the governing law underlying this contract dispute. Skyland does not dispute that the insurance contract in question contains a valid choice of law provision designating Oklahoma law as the law that govern this matter.

Under Oklahoma law, the language of an insurance policy, like any other contract, must be construed in such a way as to give effect to the intention of the parties. *Porter v. Okla. Farm Bureau Mut. Ins. Co.*, 330 P.3d 511, 515-16 (Okla. 2014). The Court should therefore consider the policy as a whole and try to ascertain the intention of the parties from the language used, the situation of the parties, the nature of the subject matter and the purpose to be accomplished. *Branch v. Farmers Ins. Co.*, 55 P.3d 1023, 1028 (Okla. 2002); *Duncan Oil Props. v. Vastar Resources, Inc.*, 16 P.3d 465, 466 (Okla. Civ. App. 2000). Because the insurer prepares its own contracts, it has a duty to make the meaning clear. Therefore, the insurer must use clear and

unambiguous language if it intends to restrict or limit coverage. *First United Methodist Church of Still water, Inc. v. Phila. Indem. Ins. Co.*, 423 P.3d 29, 34 (Okla. Civ. App. 2016). If the insurer fails to use clear and unambiguous language, the policy will be liberally construed in favor of the insured. *Porter v. Okla. Farm Bureau Mut. Ins. Co.*, 330 P.3d 511, 515-16 (Okla. 2014). Stated otherwise, if the terms of an insurance policy are ambiguous or uncertain, conflicting or susceptible of more than one construction, the construction most favorable to the insured must prevail. *Nat'l Am. Ins. Co. v. New Dominion, LLC,* 499 P. 3d 9, 16 (Okla. 2021); *Andres v. Okla. Farm Bureau Mut. Ins. Co.*, 227 P.3d 1102 (Okla. Civ. App. 2009). Generally, exceptions, limitations and exclusions to insurance policies are narrowly construed on the theory that the insurer, having affirmatively expressed coverage through broad promises assumes the duty to define any limitations on that coverage in clear and explicit terms. *BP Am., Inc. v. State Auto Prop. & Ca. Inc. Co.*, 148 P.3d 832 (Okla. 2005). If an insurance policy is ambiguous, that means it is open to interpretation by the Court. Whether an insurance contract is ambiguous is a question of law. *Brown v. Farm Bureau Mut. Ins. Co.*, 261 P.3d 622, 627 (Okla. Civ. App. 2011). An insurance policy is ambiguous if it is reasonably subject to more than one interpretation. *Nat'l Am. Ins. Co. v. New Dominion, LLC,* 499 P. 3d 9, 16 (Okla. 2021). And an ambiguous provision in an insurance contract will not be permitted to defeat coverage that was reasonably expected by the insured. *Id.* Furthermore, any ambiguity will be construed against the insurance company. *Andres v. Okla. Farm Bureau Mut. Ins. Co.*, 227 P.3d 1102 (Okla. Civ. App. 2009).

**Application to Facts of the Case**

**A. Skyland Can Meet Its Burden to Demonstrate that It is Entitled to Coverage Under the TriPak Insurance Policy**

It is Skyland's contention that Triangle has a duty to defend and indemnify Skyland in the Underlying Lawsuit under the Policy's Property Insurance section, which covers loss and theft of

Stock. The Policy defines Stock under Tri-Pack provision I.A.2.a.1 to include grain. Grain is what is at issue in this matter. Meyer Ag effectively stole the grain from Agrifund by transferring it from Meyer AG to TCC to avoid paying Agrifund. As discussed below, Skyland was not complicit in this behavior it was simply behaving in the only was it could under the circumstances; as it was its obligation to do. Skyland's employees did not engage in a dishonest or criminal act, which would negate coverage under the policy.

Under the Tri-Pak Insurance Policy issued by Plaintiff, coverage for stock includes stock owned by Skyland or that which is held under a storage contract or specific agreement. *See* Tri-Pak Insurance Policy at Section I.A.2.a.1.a. and b. In this case, the grain at issue should be covered under this section of the insurance policy as stock whether it was owned by Skyland after it was purchased from TCC or whether it was still owned by TCC prior to be purchased by Skyland. Furthermore, that coverage should also extend to the situation describe herein-the effective theft of the grain by Meyer Ag from Agrifund when it sold the grain to Skyland through TCC absent Agrifund's security interest. *See* Tri-Pak Insurance Policy at Section I.B.2. and I.E.13.

Skyland further contends that it owed no duty to Agrifund when it purchased the grain in question. The Policy language does not require this duty of Skyland which is of import because Skyland's employees were not involved in the deception of Agrifund which, if they were, may negate coverage under the policy. *See* Tri-Pak Insurance Policy at Section I.B.2.h. As it is, Skyland committed no dishonest or criminal act, which would negate coverage under the policy. Rather, any dishonest act was committed by Meyer Ag in this case and the underlying lawsuit.

Furthermore, TCC was the seller of the grain. And TCC was not listed on the Notice or any other security interest notice that Skyland received during the time period in question. Also, the Notice applied only to crops grown on certain land and was not a blanket security interest notice

9

applicable to all crops grown by the Debtors. Accordingly, not all the crops were grown on land subject to the security interest. Therefore, grain purchased from TCC was able to be purchased free from Agrifund's lien, which is germane to this case because grain is considered stock under the Policy, and the grain was effectively stolen by Meyer Ag when it was transferred from Meyer AG to TCC to avoid paying Agrifund. Skyland had no part in the deception of Agrifund, which rests squarely on the shoulders of Meyer AG and TCC.

Skyland was under no obligation to investigate the ownership of the grain as it is not a fact finder or investigator as the policy does not require this duty of Skyland in any way which is of import because Skyland's employees were not involved in the deception of Agrifund which, if they were, may negate coverage under the policy. Skyland's role under the United States Warehouse Act is clear, which is to promptly deliver grain upon demand made by the holder of the receipt of said grain. See 7 U.S.C. § 241 et seq. Skyland can be fined for noncompliance. Id. § 254. Once Travis Meyer informed Skyland that said grain belonged to TCC, Skyland had a sufficient basis and duty to transfer the grain and to act in purchasing said grain free of any liens. Further, once Travis Meyer requested the transfer of grain from Meyer Ag to TCC, Skyland was obligated to make the transfer and accept TCC as the owner.

It is standard industry practice to assign grain contracts, which the policy does not prohibit. Accordingly, it was not unusual for grain to be transferred from Meyer Ag to TCC, and the contracts for sale to be assigned along with the transferred grain. Thus, the simple transfer of grain was nothing that would have or should have raised red flags for Skyland. In fact, Skyland was obligated to transfer the grain once the request was made.

Finally, in the Underlying Lawsuit, Agrifund attempts to impose upon Skyland a heightened duty to act as the "grain police," when in fact, Skyland is under no obligation to

investigate whether its clients intend to commit a crime or a tort. This means that Skyland was under no duty to determine whether the grain Travis Meyer was transferring from Meyer Ag to TCC was subject to the security interest. Again, the policy language does not require this duty of Skyland and there is a noted absence of this duty throughout the policy.

**Response to Defendant's Arguments**

### A. Plaintiff's Argument That the Tri-Pak Insurance Policy Does Not Provide Coverage for Third Party Claims

Plaintiff argues that Skyland cannot prevail in this matter because it makes a third-party claim, which is not covered under the policy in question. However, the Plaintiff cites no binding authority in its brief that would require the Court to make this finding. Plaintiff cites no Oklahoma or 10th Circuit law to support its position. Accordingly, the Court is not bound by the law cited by Plaintiff and Skyland would argue that its claim should be allowed to proceed.

### B. Plaintiff's Argument That Skyland Cannot Meet Its Burden to Establish Coverage for Stock Under the Policy

Plaintiff argues that Skyland cannot establish coverage for stock under the policy. Yet, as set forth above, the policy clearly covers stock such as the grain that is at issue here. Plaintiff even admits that grain is considered stock under the policy and is generally covered.

The plaintiffs attempt to shoehorn Skyland's argument that Meyer Ag effectively stole the grain from Agrifund under the definition of "securities." However, the definition of "securities is as follows: "negotiable and nonnegotiable instruments or contracts representing either money or other property." Under Oklahoma law the plain meaning of the contract language is to be used. *Porter v. Okla. Farm Bureau Mut. Ins. Co.*, 330 P.3d 511, 515-16 (Okla. 2014). Clearly, Skyland's argument that Meyer Ag stole the grain from Agrifund by Transferring it to TCC and then selling it to Skyland free of the security interest is neither a negotiable instrument nor a contract and does

not meet the definition of "securities" under the policy, which Plaintiff conveniently glosses over. Furthermore, under Oklahoma law, if the Court finds that there is a legitimate difference of opinion as to the meaning of this part of the contract, it must be resolved in favor of Skyland. *Andres v. Okla. Farm Bureau Mut. Ins. Co.*, 227 P.3d 1102 (Okla. Civ. App. 2009).

### C. Plaintiff's Argument That Skyland Cannot Establish Direct Physical Loss

Plaintiff argues that Skyland cannot prevail in this matter because it cannot establish that there was a direct physical loss, which is not covered under the policy in question. However, the Yet, once again, Plaintiff cites no binding authority in its brief that would require the Court to make this finding. Plaintiff cites no Oklahoma or published 10th Circuit law to support its position. Accordingly, the Court is not bound by the law cited by Plaintiff and Skyland would argue that its claim should be allowed to proceed.

### CONCLUSION

For the foregoing reasons, Skyland respectfully submits that Triangle's Motion for Summary Judgment should be submitted to the trier of fact. Therefore, its motion should be denied in its entirety.

RESPECTFULLY SUBMITTED,

/s/ Chris J. Kellogg
Chris J. Kellogg, #21651
KENNEDY BERKLEY
119 West Iron Avenue, 7th Floor
P.O. Box 2567
Salina, Kansas 67402-2567
(785) 825-4674
ckellogg@kenberk.com
ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he electronically filed the forgoing Memorandum Brief in Opposition to Defendant's Motion for Summary Judgment with the Clerk of the Court by using the CM/ECF System, which will send a notice of electronic filing to the following:

>Greg A. Drumright, #20743
>Martin, Pringle, Oliver
>  Wallace & Bauer, L.L.P
>645 E. Douglas, Suite 100
>Wichita, KS 67202
>gadrumright@martinpringle.com

on this 30th day of June 2022.

>/s/ Chris J. Kellogg
>Chris J. Kellogg