IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TRIANGLE INSURANCE COMPANY, INC.,

    Plaintiff,

v.                                                  Case No. 21-1190-JWB

SKYLAND GRAIN, LLC,

    Defendant.

## MEMORANDUM AND ORDER

Plaintiff Triangle Insurance Company, Inc. moved for summary judgment. (Doc. 31.) The motion is fully briefed and ripe for decision. (Docs. 32, 37, 38.) For the reasons stated herein, Plaintiff's motion is GRANTED.

### I.  Facts and Procedural Background

The following statement of facts is taken from the parties' submissions.[1] Factual disputes about immaterial matters are not relevant to the determination before the court. Therefore, immaterial facts and factual averments that are not supported by record citations are omitted.

Plaintiff is an insurance company and Defendant is a grain farmers' co-op. Plaintiff issued an insurance policy to Defendant. Defendant operates grain receiving facilities, purchases grain from farmers, and provides fertilizers and chemicals to farmers. (Doc. 32 at 6.)

Agrifund is a business which provides financial services, such as loans, to farmers. In February 2020, Agrifund provided a loan to Meyer Ag, LLC ("Meyer Ag"), Meyer Farms Partnership, Travis Ray Meyer, and Brenda Gayle Meyer (collectively, "the Debtors"). "The

---

[1] Defendant did not controvert any facts contained in Plaintiff's statement of facts but did supply additional facts for the court's consideration. (Doc. 37 at 2–5.) Plaintiff counters that the additional facts provided by Defendant are immaterial. (Doc. 38 at 2–5.) The court considers some of these additional facts, finding others immaterial.

Debtors executed a Demand Promissory Note to Agrifund in the amount of $1,650,011 with a maturity date of January 15, 2021; secured by a Security Agreement in which the Debtors pledged an interest in all crops (among other things) as collateral; and a Commercial Loan Agreement." (*Id.*)

Agrifund provided a Food Security Act Notice of Security Interest to Buyer of Farm Products to Defendant, which allowed Defendant to purchase grains from the Debtors but required payment to be jointly made to Agrifund and the Debtors. Defendant signed and acknowledged receipt of the notice on May 21, 2020, and entered information about the notice into its accounting software for the Meyer Ag account. This notice did not list Total Crop Care, LLC ("TCC"). It also mentioned certain land, but then went on to say it applied broadly to all crops grown in all Kansas counties in all crop years. (Doc. 32 at 6–7; Doc. 37 at 5; Doc. 38 at 3.)

Between September 2020 and January 2021, Meyer Ag harvested and delivered grain to Defendant which was applied to four contracts between Meyer Ag and Defendant. According to each of those contracts, Meyer Ag was the seller and Defendant was the buyer of the grain. At the outset of these interactions, in September 2020, Travis Meyer asked Defendant to transfer the grain from Meyer Ag to TCC on Defendant's books. Travis Meyer told Lori Deyoe, a grain originator for Defendant, that he planned to bring everything in under Meyer Ag, but that he would transfer everything to TCC. TCC has the same mailing address as Meyer Ag, identifies Travis Meyer as the registered agent, and Travis Meyer is the only member identified as having more than a five-percent interest in TCC. (Doc. 32 at 7–8, 10.)

Once Meyer Ag delivered the grain to Defendant, Travis Meyer asked Defendant to apply it to Meyer Ag's forward contracts and then transfer any remaining grain from Meyer Ag's account to TCC's account. Defendant did as requested, making the transfers, and purchasing the grain

from TCC. Defendant's payments to TCC were issued to TCC in care of Travis Meyer and did not include Agrifund as a joint payee. Defendant's accounting software did not indicate that Agrifund had a lien and needed to be included as a joint payee. Defendant entered the lien as to Meyer Ag's account and not as to TCC's account because TCC was not listed on the notice. The Debtors ultimately defaulted on the loan from Agrifund. (*Id.* at 8, 10; Doc. 37 at 5.)

After the default, Agrifund filed a lawsuit against Defendant and others in the District Court of Stevens County, Kansas. Agrifund alleges that it perfected the lien on the grain delivered by Meyer Ag to Defendant between September 2020 and January 2021. Agrifund also alleges that Defendant committed "conversion and fraudulent transfer of Agrifund's security interest or proceeds in the grain that TCC sold." (Doc. 32 at 9.) Further, Agrifund alleges that Defendant should have included Agrifund on the checks it wrote to TCC and seeks to recover $454,813.72 from Defendant, jointly and severally with TCC and the Debtors themselves. (*Id.*)

Plaintiff issued a Tri-Pack insurance policy to Defendant which was in effect from February 1, 2020 through February 1, 2021. This insurance policy included commercial general liability insurance and property insurance. The property insurance covered, in part, real property and business personal property. It specifically excluded coverage for "[a]ccounts, bills, currency, deeds, food stamps or other evidences of debt, money, notes or securities"[2] and Stock.[3] (*Id.* at 12, emphasis omitted.) Stock was covered when owned by Defendant or held under storage contract or in trust by Defendant at insured locations. The policy excluded coverage for "[g]rain stock on the ground, except as covered by the Grain on the Ground Named Peril Coverage Endorsement." (*Id.*, emphasis omitted.)

---

[2] "Securities means negotiable and nonnegotiable instruments or contracts representing either money or other property[.]" (Doc. 32 at 20, emphasis omitted.)
[3] "Stock means merchandise held in storage for sale, raw materials and in process or finished goods, including supplies used in their packaging or shipping." (*Id.*, emphasis omitted.)

Further, the policy "insure[d] against risks of direct physical loss unless the loss is excluded or limited in" the limitation of perils section. (*Id.*, emphasis omitted.) That section included certain limitations, including loss of use, neglect, and parting voluntarily with property when induced to do so by fraud, trick, or false pretense. Additionally, the policy explained Plaintiff would not pay for loss for property that was missing or for "[a]ny legal proceedings or process." (*Id.* at 13.) Burglary, robbery, or theft were also specifically discussed, and the coverage did not protect money or securities, loss caused by Defendant or any of Defendant's agents, or loss caused by fraud, trick, or false pretense. (*Id.* at 12–14.)

The policy also imposed certain conditions and duties upon Defendant, such as the duty to act promptly in the event of a loss, such as calling the police, providing a description of the loss, and taking reasonable steps to prevent further loss. The Ground Named Peril Coverage Endorsement provided certain specific situations in which Plaintiff would pay for loss to Stock, and all were physical conditions, such as fire, windstorm, smoke, and physical contact with aircraft or vehicles. (*Id.* at 16–18.)

In contrast with the property insurance section, the commercial general liability section provided:

> We [Plaintiff] will pay those sums that the insured [Defendant] becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. We will have the right and duty to defend the Insured against any suit seeking those damages. However, we will have no duty to defend the insured against any suit seeking damages for bodily injury or property damage to which the insurance does not apply.

(*Id.* at 19, emphasis omitted.)

Plaintiff provided a Reservation of Rights letter to Defendant on June 30, 2021, initially agreeing to defend Defendant in the underlying lawsuit by Agrifund. That letter also reserved the right to deny coverage for any judgment against Defendant. Shortly thereafter, Plaintiff filed its

4

complaint seeking declaratory judgment that it has no duty to defend or indemnify Defendant in the underlying suit. (Doc. 1; Doc. 32 at 21.)

## II.     Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *See Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol—Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

## III.    Analysis

Defendant has the initial burden of showing that the loss is covered under the policy. *Cherokee Nation v. Lexington Ins. Co.*, Case No. 119,359, 2022 WL 4138429, at *3 (Okla. Sept. 13, 2022).[4] "The parties' agreement is read as a whole giving the language its ordinary and plain meaning to carry out the parties' intentions." *Okla. Sch. Risk Mgmt. Trust v. McAlester Pub. Sch.*,

---

[4] The parties agree that Oklahoma law governs this dispute pursuant to the choice of law provision in the insurance contract. "[I]n Oklahoma, we abide by 'the maxim that a court will not interfere with the contract of the parties absent fraud, duress, undue influence or mistake, and that courts are interested only in the legality of the contract.'" *Fossil Creek Energy Corp. v. Cook's Oilfield Servs.*, 242 P.3d 537, 541 (Okla. Civ. App. 2010) (quoting *Bilbrey v. Cingular Wireless, L.L.C.*, 164 P.3d 131, 134 (Okla. 2007)); *see also id.* at 541 n.5 ("Generally, the law of the state chosen by the parties to govern their contractual rights and duties will be applied…" (further quotation and alterations omitted)). The court agrees that Oklahoma law governs this dispute.

457 P.3d 997, 1005 (Okla. 2019).  Defendant relies solely on the property insurance section to establish coverage.

At the outset, it is important to discuss the "property" that is in dispute in the underlying lawsuit because it is necessary to understand and decide these arguments.  Defendant characterizes the property as Stock or grain.  (Doc. 37 at 8–9.)  Plaintiff characterizes it as money or securities.  (Doc. 32 at 25.)  However, Defendant does not controvert the fact that in the underlying lawsuit, Agrifund alleges "conversion and fraudulent transfer of Agrifund's security interest or proceeds in the grain that TCC sold to Skyland."  (Doc. 32 at 9, ¶24; Doc. 37 at 3, ¶24.)  The court agrees with Plaintiff.  The underlying lawsuit does not seek to recover the actual grain that Defendant purchased from TCC.  (Doc. 32-3 at 8, 12.)  The underlying lawsuit seeks to recover economic damages from Defendant for failing to pay Agrifund for its security interest in the grain.  (*Id.*)

Plaintiff argues, in part, that the property insurance section covers only first party claims by the insured for physical loss and provides no coverage for third party claims.  (Doc. 32.)  Defendant argues that the property insurance section imposes upon Plaintiff a duty to defend Defendant in the underlying suit.  (Doc. 37.)

The property insurance section of the policy provides first party coverage "[b]ecause it is a promise by the insurer to pay its own insured, rather than a promise to its insured to pay some third party."  *Dallas v. GEICO Ins. Co.*, 445 P.3d 873, 878 (Okla. Civ. App. 2019).  Third party coverage is a promise by the insurer to the insured to pay someone other than the insured.  *See id.*  The entire property insurance section describes the covered property, owned by the insured, and the perils the insurance protects against, which are all types of direct physical loss to property that the insured might experience.  That section also specifically excludes coverage for "[a]ny legal proceedings or process."  (Doc. 32-4 at 36.)  By contrast, the commercial general liability insurance

section provides that the insurer has a duty to pay a third party for damages and a duty to defend a lawsuit against the insured for bodily injury or property damage.  (Doc. 32-4 at 157.)  Defendant does not provide a substantive response to this argument, and nothing within this property insurance section could be construed as a promise to pay a third party for loss or as imposing upon the insurer a duty to defend the insured in an action by a third party.

Defendant correctly argues that the property insurance section protects Stock from loss or theft.  The property insurance section includes a Burglary, Robbery, or Theft Coverage Extension which covers loss to Stock caused by burglary, robbery, or theft under certain conditions.  (Doc. 32-4 at 42.)  However, this coverage extension does not apply to "[l]oss caused by your being induced by any fraudulent scheme, trick, devise or false pretense with the title to or possession of any property."  (Doc. 32-4 at 43, emphasis omitted).  Further, this coverage extension explicitly does not apply "[t]o the defense of any legal proceedings brought against you, or to fees, costs, or expenses incurred or paid by you in prosecuting or defending any legal proceedings."  (*Id.*)  Additionally, the Burglary, Robbery, or Theft Coverage Extension does not apply to "[m]oney or securities."  (Doc. 32-4 at 43.)  The alleged conversion and fraudulent transfer was of a security interest or proceeds, not the actual grain itself, and any loss was induced by TCC asking to transfer the grain on Defendant's books to TCC.  (Doc. 32-3 at 8, 12.)  This coverage extension does not provide coverage to Defendant.

Plaintiff also points out that loss to money or proceeds is not covered by the policy in general.  (Doc. 32 at 25–26.)  This is true, as the policy specifically notes that it does not cover "[a]ccounts, bills, currency, deeds, food stamps or other evidences of debt, money, notes or securities."  (Doc. 32-4 at 28, alterations omitted.)  Defendant's only response to this argument is that the underlying dispute is about grain, not money, which this court has already addressed.

7

Defendant fails to make any convincing arguments as to why it has carried its burden to show there is coverage. In Defendant's memorandum in opposition, Defendant points out that Plaintiff does not cite Tenth Circuit or Oklahoma law to support its arguments. (Doc. 37 at 11–12.) But Defendant also does not cite Tenth Circuit or Oklahoma law in support of its position on two out of three arguments.[5] (*Id.*) Defendant fails to cite any law to support these arguments. (*Id.*) Instead, Defendant devotes its effort to arguing why it should succeed in the underlying state case and did not commit any tort against Agrifund. Ultimately, that question is not before this court and Defendant should argue those issues to the state court in the underlying suit.

The court is not convinced that Defendant has carried its burden and concludes there is no coverage under the policy and therefore, no duty to defend or indemnify.

## IV.   Conclusion

For the above reasons, Plaintiff's motion for summary judgment (Doc. 31) is GRANTED.

IT IS SO ORDERED this 24th day of October, 2022.

        s/ John W. Broomes
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE

---

[5] In fact, Defendant barely makes any argument. In Defendant's 13-page memorandum in opposition, Defendant devotes about a page and a half to its response to Plaintiff's arguments. (Doc. 37 at 11–12.) Confusingly, Defendant titles this section "Response to Defendant's Arguments," but the substance of the section responds to Plaintiff's arguments. (*Id.*)